# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: BROILER CHICKEN GROWER**                                MDL No. 2977
**ANTITRUST LITIGATION (NO. II)**

## TRANSFER ORDER

**Before the Panel:**  Plaintiffs in the Eastern District of North Carolina and Eastern District of Oklahoma actions listed on Schedule A[1] move under 28 U.S.C. § 1407 to centralize pretrial proceedings in this litigation in the Eastern District of Oklahoma.  This litigation consists of four actions pending in four districts, as listed on Schedule A.  The parties have notified the Panel of a related action pending in the Northern District of California.[2]  Plaintiffs in all the actions support centralization in the Eastern District of Oklahoma.  Responding defendants[3] oppose centralization, but agree that, if centralized, the Eastern District of Oklahoma should serve as the transferee district.

Moving plaintiffs previously sought to centralize this litigation two years ago.  *See In re Broiler Chicken Grower Antitrust Litig.*, 325 F. Supp. 3d 1366 (J.P.M.L. 2018).  Defendants at that time supported the creation of an MDL.  Even so, we denied centralization because the litigation consisted of only the North Carolina and Oklahoma actions, which were brought by the same plaintiffs against different defendants.[4]  Thus, informal cooperation and coordination among the parties and the courts constituted a feasible and preferable alternative to centralization.  *Id.* at 1367.

Our denial of plaintiffs' first centralization motion does not preclude us from reaching a different result here.  We will do so only rarely, however, where a significant change in

---

[1] Plaintiffs in both actions are the same: Haff Poultry, Inc.; Nancy Butler; Johnny Upchurch; Jonathan Walters; Myles B. Weaver; and Melissa Weaver.

[2] This and any other related actions are potential tag-along actions.  *See* Panel Rules 1.1(h), 7.1, and 7.2.

[3] Responding defendants are:  Tyson Foods, Inc.; Tyson Chicken, Inc.; Tyson Breeders, Inc.; Tyson Poultry, Inc.; Perdue Farms, Inc.; Pilgrim's Pride Corporation; Koch Foods, Inc.; Koch Meat Co., Inc., d/b/a Koch Poultry Co.; Sanderson Farms, Inc.; Sanderson Farms, Inc. (Food Division); Sanderson Farms, Inc. (Processing Division); and Sanderson Farms, Inc. (Production Division).

[4] Plaintiffs' claims initially were brought in a single action in the Eastern District of Oklahoma.  The court dismissed two groups of defendants—Sanderson and Koch—on personal jurisdiction and venue grounds.  Plaintiffs then filed a second action in the Eastern District of North Carolina against Sanderson and Koch and sought to centralize the litigation in Oklahoma.

circumstance has occurred.  *See In re Plavix Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 923 F. Supp. 2d 1376, 1378 (J.P.M.L. 2013).  In support of their new motion, plaintiffs argue that the number of involved cases, districts, and plaintiffs' counsel have increased since our 2018 decision, and that informal coordination and cooperation are no longer practicable to manage this litigation.  After careful review of the record, we agree with this assessment.

There are now five substantially similar actions in this litigation, pending in five districts ranging from California to North Carolina.  Unlike the two actions that were before the Panel in 2018, plaintiffs in the three newly-filed actions are each represented by separate counsel.  Plaintiffs in all the actions assert identical putative nationwide classes.  Coordination of pretrial proceedings in this litigation remains necessary, but will be more difficult moving forward given the increased number of involved parties, counsel, and courts.  Additionally, plaintiffs credibly argue that the discovery process in the first-filed Oklahoma action has been complicated because plaintiffs must seek discovery from two groups of defendants (Koch and Sanderson) as third-parties under Federal Rule of Civil Procedure 45.  The North Carolina action, in which Koch and Sanderson are named defendants, has been stayed pending resolution of the first-filed Oklahoma proceedings.  Centralization undoubtedly would streamline discovery against all defendants.

Defendants do not directly contest plaintiffs' arguments, but instead argue that centralization is not necessary because they have filed or will file motions to dismiss all of the actions, save the Eastern District of Oklahoma action, under the first-to-file doctrine.  Defendants are correct that we previously have denied centralization when there is a "reasonable prospect" that first-to-file or similar motions will eliminate the multidistrict character of the litigation.  *See In re Gerber Probiotic Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379–81 (J.P.M.L. 2012).  The mere pendency of such motions, however, is not dispositive, and we look to other circumstances to determine whether there is a reasonable prospect that the motion practice will resolve the difficulties posed by duplicative litigation.  *See In re Natrol, Inc. Glucosamine/Chondroitin Mktg. & Sales Practices Litig.*, 26 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014).  Here, defendants' motions must be granted in all four of the non-Oklahoma actions in order to eliminate the multidistrict character of this litigation—defendants concede that, if any of their motions are denied, centralization of this litigation will be necessary.  The only court to have ruled on defendants' first-to-file argument was the Eastern District of North Carolina, which stayed that action rather than dismissing it (and thus, potentially, complicating discovery in the Oklahoma action).  On this record, we are unwilling to read that decision as supporting a reasonable prospect that defendants' first-to-file motions will eliminate the multidistrict character of this litigation.[5]

---

[5] The North Carolina defendants have now moved to dismiss the North Carolina action (as opposed to leaving that action stayed).  If defendants' first-to-file motions are granted in both North Carolina and the later-filed actions, Koch and Sanderson potentially might escape any liability for the alleged conspiracy should plaintiffs' claims succeed.  This counterintuitive result further suggests that the prior first-to-file ruling in the North Carolina action does not weigh strongly in support of defendants' argument that their motions present a reasonable prospect of eliminating the

(continued...)

-3-

Therefore, after considering the arguments of counsel,[6] we find that the actions listed on Schedule A involve common questions of fact, and that centralization in the Eastern District of Oklahoma will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. These actions share factual questions arising from allegations that defendants agreed not to compete for "Broiler Grow-Out Services," *i.e.*, the services of farmers (referred to by the parties as Growers) who raise broiler chickens under contracts with chicken processors such as defendants. Specifically, plaintiffs allege an agreement among defendants not to recruit or contract with Growers contracted by another defendant or co-conspirator. They also challenge as anticompetitive defendants' submission of cost information to Agri Stats—a third party—for use in benchmarking reports. Plaintiffs in each of the actions assert the same claims under the Sherman Act and the Packers and Stockyard Act with respect to the same putative nationwide classes of Growers. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to class certification and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary.

All parties agree that this MDL should be assigned to the Eastern District of Oklahoma. We concur. The Oklahoma action is the first-filed action and the most procedurally advanced—it is the only action that has progressed beyond the pleadings stage. Moreover, the Honorable Robert J. Shelby of the District of Utah, who sits in the Eastern District of Oklahoma by designation, has the most familiarity with the subject matter of this litigation, having already ruled upon multiple dismissal motions. Centralization in the Eastern District of Oklahoma allows us to assign this litigation to an able jurist with multidistrict litigation experience. We are confident that Judge Shelby will steer this litigation on an efficient and prudent course.

---

[5](...continued)
multidistrict character of this litigation.

[6] In light of the concerns about the spread of COVID-19 virus (coronavirus), the Panel heard oral argument by videoconference at its hearing session of December 3, 2020. *See* Suppl. Notice of Hearing Session, MDL No. 2977 (J.P.M.L. Nov. 16, 2020), ECF No. 57.

-4-

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Eastern District of Oklahoma are transferred to the Eastern District of Oklahoma and, with the consent of that court, assigned to the Honorable Robert J. Shelby, sitting in the Eastern District of Oklahoma by designation pursuant to 28 U.S.C. § 292(b), for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

| | |
|---|---|
| Catherine D. Perry | Nathaniel M. Gorton |
| Matthew F. Kennelly | David C. Norton |
| Roger T. Benitez | Dale A. Kimball |

**IN RE: BROILER CHICKEN GROWER**                         MDL No. 2977
**ANTITRUST LITIGATION (NO. II)**

## SCHEDULE A

<u>District of Colorado</u>

MCENTIRE, ET AL. v. TYSON FOODS, INC., ET AL., C.A. No. 1:20−02764

<u>District of Kansas</u>

COLVIN v. TYSON FOODS, INC., ET AL., C.A. No. 2:20−02464

<u>Eastern District of North Carolina</u>

IN RE: SANDERSON AND KOCH BROILER CHICKEN GROWER LITIGATION,
C.A. No. 7:18−00031

<u>Eastern District of Oklahoma</u>

HAFF POULTRY, INC., ET AL. v. TYSON FOODS, INC., ET AL.,
C.A. No. 6:17−00033